**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Givair Ribeiro De Caris,<br><br>                                 Debtor.<br><br>LM Insurance Corporation,<br><br>                                 Plaintiff,<br>v.<br><br>Givair Ribeiro De Caris,<br><br>                                 Defendant. | C/A No. 16-03112-DD<br><br>Adv. Pro. No. 16-80149-DD<br><br>Chapter 7<br><br>**ORDER** |

Givair Ribeiro De Caris ("Defendant") filed a voluntary petition for relief under chapter 7 of the bankruptcy code on June 23, 2016. LM Insurance Corporation's ("Plaintiff") complaint in this adversary proceeding contains two causes of action: non-dischargeability of Plaintiff's claim under 11 U.S.C. § 523(a)(2)(A) and objection to Defendant's discharge under 11 U.S.C. § 727(a)(3). Trial was held on May 15-16, 2018. Jurisdiction is premised upon 28 U.S.C. §§ 1334 and 157(a). Venue is proper under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and 157(b)(2)(J).

## FACTS

1. Defendant, the debtor in the underlying case, is an individual, a citizen of Brazil, and resident of South Carolina. Defendant moved to the United States in 2004 or 2005. He has always worked in the construction industry. Defendant's first language is Portuguese and his highest level of education is sixth grade.

2. Defendant operated a sole proprietorship in the construction industry from December 2012 through approximately March 2016.

3. Through the Workers Compensation Assigned Risk Plan, Defendant provided information and completed an Application for Insurance coverage December 28, 2012. Pursuant to the Application, all information provided by Defendant was provided under penalty of perjury and penalty of criminal prosecution.

4. Coverage for Defendant was assigned to Plaintiff through the Assigned Risk Plan. Once the coverage was assigned in the Assigned Risk Plan, Plaintiff was required to provide initial coverage, without further investigation, based on the information provided in the Application for Insurance. Plaintiff used the information provided by Defendant on the Assigned Risk Plan application to, among other things, set the premium due under the policy.

5. Defendant's Application indicated that he would operate as a sole proprietor and had no employees and no subcontractors.

6. Plaintiff issued worker's compensation insurance policy WC5-35S529957-012 ("2012/2013 Policy") to Defendant on December 29, 2012.

7. In January 2013, Defendant caused to be issued twenty-six Certificates of Insurance showing LM Insurance Corp. as worker's compensation insurer. The Certificates of Insurance were issued by Defendant's insurance agent Raymond Roe & Associates to Defendant. In discovery, Defendant produced 249 issued Certificates of Insurance. Defendant did work for and was paid by each person or entity that a Certificate of Insurance was issued to.

8. On February 18, 2014, Plaintiff performed an audit on the 2012/2013 Policy. Defendant hired a bookkeeper, Bernard Luvaga, to respond to and participate in the audit on his behalf. Luvaga provided the auditor with a copy of Defendant's purported 2013 Internal

Revenue Service ("IRS") form 1040 Schedule C that reflected $80,700 in gross income. Defendant disclosed his use of cash paid subcontractors and cash paid contract labor in response to the audit. At the 2012/2013 audit, Defendant disclosed $57,702 in payments to subcontractor or contract labor to Plaintiff's auditor.

9. The 2012/2013 audit led Plaintiff to conclude that there was minimal exposure to loss, Defendant had no employees, no payroll, and did not engage in commercial work.

10. The 2013 IRS form Schedule C presented to the auditor at the audit was revised by Luvaga before it was filed with the IRS to reflect $4,971,264, not $80,700, in gross income.

11. Creditor issued insurance policies to Defendant in three subsequent years.

12. On February 20, 2015, Plaintiff performed an audit of the 2013/2014 policy period. In conducting the 2013/2014 policy audit, Defendant again hired his bookkeeper, Luvaga, to respond to the audit on his behalf.

13. At the 2013/2014 audit, Defendant disclosed $222,450 in payments to subcontract labor. Luvaga provided the auditor with a copy of a 2013 IRS form 1040 Schedule C showing income of $80,700. The filed 2013 IRS form Schedule C obtained in discovery reflected $4,971,264 in gross income.

14. Plaintiff sent Defendant an audit request for the 2014/2015 policy on January 26, 2016 and made phone calls to Defendant on January 26, 2016. Plaintiff sent Defendant an audit request for the 2015/2016 policy on April 13, 2016 and made phone calls to Defendant on April 3, 2016 but was unable to conduct an audit for either year because Defendant did not respond to the audit requests, did not show up at the scheduled audit, and did not provide any information.

15. Plaintiff calculated the estimated premiums owed by Defendant to be $7,124,591.98 for the period 2012-2015.

16. Debtor filed a voluntary petition for relief under chapter 7 of the bankruptcy code on June 23, 2016.

17. Debtor provided the chapter 7 Trustee and/or produced during discovery the following records:

    a. 2013 IRS 1040;
    b. 2014 IRS 1040;
    c. 2015 IRS 1040;
    d. 249 Insurance Certificates;
    e. Bank statements for accounts for the twelve months prior to filing;
    f. Contact information for his accountant and agent during the insurance audits;
    g. IRS Transcript disclosing all 1099s issued to Debtor for 2013-2015;
    h. IRS Transcript disclosing all 1099s issued from Debtor for 2013-2015.

18. According to Debtor's 2013, 2014 and 2015 tax returns, Debtor received $21,007,568.00 in gross income by supplying labor to South Carolina construction projects during the three annual tax periods prior to filing his bankruptcy petition.

19. Debtor's tax returns indicate that he paid out $4,916,572, $8,555,804, and $7,401,787 in contract labor for the years 2013, 2014, 2015.

20. Debtor testified that he operated on a cash basis and paid subcontractors in cash.

21. Debtor had sixteen different bank accounts during the relevant time period. Debtor's bank records for 2013 to 2015 reflect total credit/deposits of $3,765,118.47. Debtor's bank records for 2013 to 2015 reflect total debits/withdrawals of $3,708,843.44.

22. Debtor was unable to provide documentation that reflects the disposition of $17,145,320.60 in income which did not go through any of his bank accounts.

23. Debtor's 2013 state and federal tax returns do not include $1,440,796.19 in payments that Debtor received from Cooper River Contracting, LLC, a contractor who provided records to Plaintiff. Defendant has no records that account for the $1,440,796.19 received from Cooper River.

24. In 2015, Cooper River paid Defendant $1,828,622.15, but Defendant's tax returns only reported $1,812,657.25 from Cooper River, a difference of $15,964.90.

25. Defendant supplied labor in connection with general construction, concrete, and roofing projects for Cooper River from January 2013 through January 2016 and was paid a total of $5,313,610.62. Debtor's bank records do not reflect deposits of the money received from Cooper River, or any payments made by Defendant to workers from Cooper River jobsites.

26. Defendant failed to or was unable to produce names, addresses, and/or telephone numbers of his subcontractors that he paid in cash. Defendant failed to or was unable to produce any written contracts with the subcontractors.

27. Defendant testified that he kept a notebook with records of money received and money paid-out for each year. He testified that he would create a one-page summary of the contents of the notebook for his bookkeeper to prepare his taxes. Defendant testified that he no longer had any of the notebooks, and that once he had a copy of his filed tax return he thought he no longer needed the notebook for the previous year. Defendant testified that the notebooks were lost on two separate occasions.

28. The notebooks were Defendant's only record of money coming in and going out.

## ANALYSIS

Plaintiff seeks a determination that Defendant is not entitled to a discharge pursuant to 11 U.S.C. §§ 727(a)(3) and 523(a)(2). The plaintiff has the burden of proving an objection to discharge under § 727 or an objection to dischargeability under § 523 by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 (1991). Once the plaintiff makings a *prima facie* case, the burden of proof shifts to the debtor to offer credible evidence to satisfactorily explain his conduct. *See Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249-50 (4th Cir. 1994).

### A. 11 U.S.C. § 727(a)(3)

Section 727(a)(3) provides "(a) The court shall grant the debtor a discharge, unless (3) The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). "Thus, a party objecting to a bankruptcy discharge petition on this basis must make an initial showing that (1) the debtor failed to keep and preserve adequate financial records, and (2) such a failure makes it impossible to ascertain the debtor's financial condition." *In re French*, 499 F.3d 345, 354 (4th Cir. 2007).

"The test is whether there is available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." *Id*. at 355 (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992)). "Neither the objecting party nor the Court is required to reconstruct the financial trail; the evidence must be sufficient to account for debtor's financial condition and

6

business transactions without requiring the creditor to reconstruct the history through a maze of transactions and business entities." *In re Volpe*, 317 B.R. 684, 690 (Bankr. D.S.C. 2003) (citing *In re Juzwiak*, 89 F.3d 424, 428–29 (7th Cir.1996)).

The question before the Court is whether the records provided by Defendant are sufficient to ascertain Defendant's financial condition or business transactions within the meaning of § 727(a)(3). The Court finds that they are not.

Defendant was able to produce bank records for the sixteen bank accounts that he maintained during the three-years that he operated his business. He was also able to produce the filed tax returns for the years that he operated his business. The financial trail painted by the bank records does not conform to the filed tax returns. Defendant's tax returns indicate that he received over twenty-one million dollars in income in the three years that he operated his business. Defendant's 2013 to 2015 bank records, compared with Defendant's tax returns for that period, demonstrate that Defendant has failed to account for over seventeen million dollars in income and alleged expenses. Defendant was unable to provide any documentation for this income. Defendant was unable to provide any documentation as to where the seventeen million dollars went. Defendant testified that he operated mostly on a cash basis. Defendant produced no documents reflecting any cash payments representing the seventeen million dollars. Defendant's choice to operate on a cash basis without adequate records makes it impossible to determine how much or what he did with the funds.

Defendant testified that he kept a running list of receipts and expenses paid-out to workers in notebooks and that he would start a new notebook for each year. Defendant was unable to produce any of the notebooks. Defendant testified that he did not remember the addresses or names of the subcontractors that he allegedly paid in cash. The statute not only

requires that debtors keep records, but that they also preserve those records. In this case, Defendant failed to preserve the records necessary to ascertain Defendant's financial condition or business transactions that he engaged in.

The records that Defendant was able to produce are also not complete or accurate. Defendant's 2013 state and federal tax returns do not include $1,440,796.19 in payments that Defendant received from Cooper River Contracting, LLC, a contractor who provided records to Plaintiff. Defendant has failed to keep or preserve any recorded information that accounts for his disposition of the $1,440,796.19. Defendant's bank account records to not reflect deposit of these funds into any of his 16 bank accounts. With no record of the disposition of this income, Plaintiff has no way of knowing how or if this money was ever disposed of. In 2015, Cooper River paid Defendant $1,828,622.15. Defendant only reported $1,812,657.25 from Cooper River on his tax returns. Defendant has offered no documentation to establish how he disposed of this money.

"Once it is determined that a debtor's records are inadequate, the burden shifts to the debtor to provide a justification." *In re Volpe*, 317 B.R. at 693. Defendant testified that he lost or threw away the notebooks that he created with the business transaction records. Defendant maintained that his bookkeeper, Bernard Luvaga, informed him that he must keep his filed tax returns for five years, but did not tell him to keep the notebook records. Defendant argues that he was not a sophisticated business person and his failure to preserve the records he created was a result of his lack of sophistication. However, Defendant was able to maintain a business that produced over twenty-one million dollars of income in only three-years. Defendant was able to procure contracts with numerous construction companies. The Court is not convinced that Defendant's failure to preserve adequate records was a result of his lack of sophistication.

Faced with a case involving a debtor who claimed to be an unsophisticated business person with limited formal education whose ability to read and write English was poor, the court in *In re Antoniou* found "[e]ven accepting the Debtor's characterization of himself as an unsophisticated businessman as true, the Court finds that to be no excuse for the complete failure of record-keeping by this Debtor for the two years prior to bankruptcy." *In re Antoniou*, 527 B.R. 71, 81 (Bankr. E.D.N.Y. 2015). As in this case, the debtor was paid in cash and kept track of his finances by keeping notes and claimed to have no record of his earnings because "after completing his taxes he discarded his notes thinking he would never 'have a need for [the] records.'" *Id.* The court held that "an honest belief by a debtor that he did not need to keep records does not constitute justification for failing to keep or preserve records under § 727(a)(3)." *Id.* The Court adopts the same reasoning and finds that Defendant's failure to preserve records of his cash transactions because he did not think he would have a need for the records is not a justification for failing to keep or preserve records.

The Court finds that the limited records provided by Defendant do not enable Plaintiff or the Court to ascertain Defendant's financial condition or business transactions. Defendant did not preserve the key business records for his company, the notebooks, that detailed where Defendant received money from and where that money went. Defendant is not entitled to a discharge, pursuant to 11 U.S.C. § 727(a)(3).

### B. 11 U.S.C. § 523(a)(2)

Plaintiff also seeks a determination that its particular debt is not dischargeable, pursuant to 11 U.S.C. § 523(a)(2). A determination of the dischargeability of Plaintiff's debt is unnecessary, as the Court has determined Defendant is not entitled to a general discharge of his debts.

## **CONCLUSION**

Keeping and preserving records to permit the Court, trustee and creditors to confirm a debtor's financial condition is a prerequisite to obtaining a discharge of debts under chapter 7. Plaintiff met its burden of proving that Defendant did not meet the minimum requirements under § 727(a)(3) of keeping and preserving records from which his financial condition and business transactions could be ascertained, and Defendant did not provide justification for his failure to keep and preserve such information. Defendant's discharge is denied pursuant to 11 U.S.C. § 727(a)(3).

At trial, Plaintiff requested that the Court make a finding that Defendant owes Plaintiff a debt of $7,124,591.98 for insurance premiums and enter a judgment for that amount. Plaintiff did not request this relief in its Complaint. The Court is not required to and does not make a finding regarding the specific debt owed to Plaintiff by Defendant, but any debt owed is not discharged.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**05/23/2018**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 05/24/2018